MERRYMAN v. BUNCH.—145 S. W. (2d) 559.

Middle Section.   October 12, 1940.

Petition for Certiorari Denied by Supreme Court, December 14, 1940.

Rutherford & Rutherford, of Nashville, for plaintiff in error.

Seay, Stockell & Edwards, of Nashville, for defendant in error.

FELTS, J.  Harris D. Merryman brought this suit against Dr. Bunch for malpractice in treating his broken leg.  The gist of the negligence charged is that Dr. Bunch failed to set and keep the bones in apposition so they could properly unite; that he concealed this condition from plaintiff by giving him opiates and morphine; that after treating plaintiff for about a month he entered into a written contract to furnish plaintiff additional medical attention and hospitalization, which he failed to furnish; and that as a result plaintiff suffered much pain, his leg had to be rebroken and reset by other surgeons, and has failed to get well, leaving plaintiff permanently disabled.  Defendant pleaded not guilty.

At the close of plaintiff's evidence the trial court directed a verdict for defendant and entered judgment dismissing the suit. Plaintiff appealed in error and insists the evidence made a case for the jury.

On January 14, 1938, plaintiff was in an automobile accident, both bones in his right leg being broken between the knee and ankle. He was taken to Dr. Bunch's Clinic for treatment.  Dr. Reese administered the ether and Dr. Bunch set the bones and put a cast on the leg.  While plaintiff was in Dr. Bunch's Hospital, on February 4, 1938, they made this agreement.

"I, Ray C. Bunch, a duly licensed physician in the State of Tennessee, of 2629 Gallatin, Road, in the City of Nashville and County of Davidson and State of Tennessee, for the sole consideration of ($750.00) Seven Hundred Fifty and No/100 Dollars, to me paid by Harris Merryman and/or Cherokee Mills and/or Jack Morris, the receipt whereof is hereby acknowledged, do hereby agree to pay all medical bills that have been incurred by the said Harris Merryman from and including January 14, 1938, to and including February 3, 1938, including my own bills, and do hereby agree to furnish the said Harris Merryman with all necessary additional medical attention, including hospitalization, only through March 4, 1938, for all personal injuries sustained by the said Harris Merryman in an accident that occurred on or about the 14th day of January, 1938, at or near the intersection of Gallatin Road and East Cahal Avenue, Nashville, Tennessee, when the said Harris Merryman was struck by an automobile owned and operated by the said Jack Morris, an employee of the said Cherokee Mills.  Witness my hand and seal this the 4th day of February, 1938.

"Ray C. Bunch,

"Ray C. Bunch, M. D."

Plaintiff was in bed in Dr. Bunch's Clinic from January 14, to March 3, 1938, 47 days. After he had been there about four weeks Dr. Bunch put on a new cast. When the old one was removed the leg was bent, the foot "twisted" and there was a "sink-hole" in the leg where it was broken. The doctor told him the sink-hole was caused by lack of circulation due to the cast being on the leg, and in the course of time it would get all right when the cast was taken off. Dr. Bunch straightened the foot, put on a new cast and continued to treat the leg. He made X-rays of the leg two or three times while treating it. During this time he gave plaintiff some morphine or codeine to relieve his pain.

On March 3, 1938, plaintiff left Dr. Bunch's Clinic and went to the home of his sister, Mrs. Chockley. He, however, continued to return to the hospital for treatment by Dr. Bunch and Dr. Bunch again changed the cast. Plaintiff was able to go about on crutches, and went several times to baseball games in Nashville. On one occasion some one walked by plaintiff, struck his toe and re-injured his leg.

On July 5, 1938, he went to a Government Hospital in Lexington, Kentucky, and stayed there four or five days. The doctors there X-rayed his leg and wanted to operate on it. But he refused to allow this and came back to Nashville. He continued to go to Dr. Bunch at intervals between July, 1938, and January, 1939. About that time he told Dr. Bunch he wished to have another surgeon operate on his leg. Dr. Bunch told him to go see Dr. Carpenter, one of the best bone specialists in the South, and Dr. Bunch would furnish him hospitalization and pay Dr. Carpenter for treating his leg. Dr. Carpenter, however, was not willing to go to Dr. Bunch's Clinic to do the operating but suggested that plaintiff go to the Protestant Hospital. Dr. Bunch would not agree to this.

In March or April, 1939, plaintiff went to the Veterans' Hospital at Memphis, where his leg was operated on again. He remained there for 59 days and came back to Nashville in June for this lawsuit. The case was not then tried and he went to the Veterans' Hospital at Johnson City, where he was a patient at the time of the trial, being given a leave of absence to come and testify. The doctors at the Johnson City Hospital would not operate but treated the leg by passing an electric current through it and putting it in hot water in an effort to cure the diseased condition of the bone. They advise plaintiff they are going to send him to the Walter Reed Hospital at Washington to see if the doctors there can cure his leg.

None of the X-rays of the leg and none of the doctors who saw or treated the leg was introduced. The only witnesses were plaintiff and his sister, Mrs. Chockley.

We think it was not error to direct a verdict for defendant. There was no evidence of any negligence on his part. The utmost

effect of the evidence was merely that the leg had failed to recover; that neither Dr. Bunch nor any of the other doctors had been able to cure it. A physician or surgeon is not liable for failure to cure. He is liable only for negligence, a breach of duty to the patient to use that degree of skill and learning which is ordinarily used under similar circumstances by members in good standing in his profession. Burnett v. Layman, 133 Tenn., 323, 181 S. W., 157; Young v. Dozier, 4 Tenn. App., 148; Beech v. Hunter, 14 Tenn. App., 188; Glover v. Burke, 23 Tenn. App., 350, 133 S. W. (2d), 611; Calhoun v. Fraser, 23 Tenn. App., 54, 126 S. W. (2d), 381. The evidence affords no explanation why the leg would not heal or why the bone was diseased. Since this might well have been due to other causes than lack of proper treatment or negligence, the rule res ipsa loquitur is inapplicable, and there was no basis for an inference of negligence against defendant. Meadows v. Patterson, 21 Tenn. App., 283, 109 S. W. (2d), 417; Cf. Lewis v. Casenburg, 157 Tenn., 187, 7 S. W. (2d), 808, 60 A. L. R., 254; Casenburg v. Lewis, 163 Tenn., 163, 40 S. W. (2d), 1038.

Plaintiff insists that the case should have been submitted to the jury on the question whether defendant breached his contract to furnish plaintiff additional medical attention and hospitalization, thus causing the injuries sued for. We do not think so. This contract was that defendant would furnish additional medical attention and hospitalization "only through March 4, 1938." There is no evidence that defendant failed to do this. He continued to treat plaintiff long after March 4, 1938. He never discharged him. In January, 1939, he offered plaintiff hospitalization and offered to pay Dr. Carpenter for treating plaintiff's leg. But this offer was not accepted, plaintiff being unable to make such an arrangement with Dr. Carpenter.

All of the assignments of error are overruled, the judgment of the circuit court is affirmed, and plaintiff will pay all the costs.

Crownover, J., and Higgins, S. J., concur.